OPINION OF THE COURT
Kaye, J.
In this mortgage foreclosure action, plaintiff-lenders seek to preclude a defense of usury, on the ground that the defense was waived by defendant-borrowers, that they are estopped from raising the defense, or that it is otherwise unavailable to them. We reject the lenders’ arguments, and dismiss their action to enforce a concededly usurious loan.
I.
In October 1982, Southside Development Co., a partnership, borrowed $150,000 from Eta Herbst (plaintiffs’ decedent), to help finance its purchase of an eight-story loft building in Manhattan, which it planned to convert to cooperative ownership. In exchange for the loan, Southside executed in Herbst’s favor a $225,000 bond bearing 8% interest, secured by a second mortgage on the building. The bond was to mature in 37 months, with quarterly interest-only payments due in the interim. Under the parties’ written agreement, $150,000 was to be prepaid to Herbst when title passed to the cooperative corporation. In addition, Herbst was given an option to exchange the remaining $75,000 due on the bond for the shares and proprietary lease to a floor of the building. The same arrangement was made with Ellen Raacke, who is not a party to this litigation.[1]
In late 1985, Southside conveyed the building to the cooperative, 18 East 17th Street Owners, Inc. (Owners). In mid- *739 August 1986, Owners made a principal payment of $75,000 and, by separate check, a payment of interest then due. A few days later, Herbst, having previously exercised her option for a floor of the building, resold her shares in the cooperative to a third party for $237,000. Herbst died on August 31,1986.
Plaintiffs — the executors of Herbst’s estate — commenced this action to foreclose on the mortgage after their demands for the $75,000 due on the bond, and accrued interest, went unheeded. Owners moved to dismiss the complaint and cancel the bond and mortgage, asserting that the transaction was usurious. In response, plaintiffs contended that Owners could not assert the usury defense because (i) Owners was a stranger to the original transaction and could not, as a grantee taking subject to an existing mortgage, claim usury in that mortgage; (ii) Southside, by conveying the building subject to a mortgage, waived the defense, which could not thereafter be raised by anyone; and (iii) the doctrine of estoppel in pais applied, based on the conduct of a Southside partner and Owners principal (Maurice Reichman), who allegedly was also Herbst’s attorney.
Supreme Court computed the actual interest rate of the loan to be 28.6%, and the lenders do not dispute that figure, or that the loan is usurious. However, Supreme Court found triable issues of fact as to whether Owners could assert the usury defense. Although the deed conveying the property from Southside to Owners did not explicitly mention the mortgage, the court observed that the cooperative offering plan documents acknowledged the mortgage, and thus there was a factual issue as to whether the conveyance was "subject to” the mortgage. In the court’s view, this same factual issue had to be resolved before a determination could be made as to Southside’s waiver of usury. Finally, on the estoppel claim, the court found issues of fact regarding Reichman’s conduct and Herbst’s reliance.
On defendants’ appeal, the Appellate Division — over a two-Justice dissent — affirmed for the reasons stated by Supreme Court, and identified two additional issues for trial. The Appellate Division opined that the transaction could be viewed as a joint venture, thus unregulated by usury laws, and that defendants’ more favorable treatment of Raacke raised issues of good faith and fair dealing implicit in all contracts. The Appellate Division certified to this Court the question whether its order was correct, which we answer in the negative.
*740 II.
Statutes prohibiting usurious loans were enacted in 15th century England, became part of New York’s colonial history, and have remained since (see, 1960 Report of NY Law Rev Commn, 1960 Legis Doc No. 65, at 75-80; Curtiss v Teller, 157 App Div 804, affd 217 NY 649). Their purpose is "to protect desperately poor people from the consequences of their own desperation.” (Schneider v Phelps, 41 NY2d 238, 243.)
In its present form, the usury statute provides: "No person or corporation shall, directly or indirectly, charge, take or receive any money * * * on the loan or forbearance of any money * * * at a rate exceeding” 16% per annum (General Obligations Law § 5-501 [2]; Banking Law § 14-a [1]). When "any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation” of the usury laws, "the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled.” (General Obligations Law § 5-511 [2].)
The consequences to the lender of a usurious transaction can be harsh: the borrower is relieved of all further payment —not only interest but also outstanding principal, and any mortgages securing payment are cancelled. In effect, the borrower can simply keep the borrowed funds and walk away from the agreement. Moreover, the borrower can recover any interest payments made in excess of the legal rate (General Obligations Law § 5-513). New York usury laws historically have been severe in comparison to the majority of States (1960 Report of NY Law Rev Commn, 1960 Legis Doc No. 65, at 77), reflecting the view of our Legislature that the prescribed consequences are necessary to deter the evils of usury.
Statutory and judicial exceptions may in some circumstances mitigate the harshness. Corporations — generally the antithesis of the "desperately poor people” referred to in Schneider v Phelps (supra) — are ordinarily barred from asserting a usury defense (General Obligations Law § 5-521 [l]).[2] *741 Banks forfeit interest but not principal (General Obligations Law § 5-511 [1]). Moreover, the defense may be waived; it may be unavailable to certain persons not party to the original transaction; and a borrower may be estopped from asserting it. This appeal concerns the last three exceptions to a defense of usury.
Standing and Waiver of Usury
This Court has stated that "the mortgagor may * * * waive the usury and elect to affirm the mortgage by selling and conveying his property subject to the lien and payment of such mortgage, and the purchaser, in that case, takes the equity of redemption merely and cannot question the validity of the mortgage on [the] ground of usury.” (Hartley v Harrison, 24 NY 170, 172.) Moreover, the ability to cancel a usurious transaction and keep the borrowed money is a "peculiar privilege upon the actual borrower,” stemming in part from the notion that the borrower is a victim of the lender (Buckingham v Corning, 91 NY 525, 530; see also, Halsey v Winant, 258 NY 512, 530). Thus, under certain circumstances, a stranger to the loan has no standing to claim that it was usurious (see, Halsey v Winant, 258 NY 512, supra; Buckingham v Corning, 91 NY 525, supra; Williams v Tilt, 36 NY 319; Sands v Church, 6 NY 347).
Whatever application these exceptions might have when an independent third party obtains property subject to a mortgage in an arm’s length transaction, we conclude that they are inapplicable in this case. The conveyance of the encumbered property from Southside to Owners was contemplated in the agreement between Herbst and Southside, and indeed was the very purpose of the loan. Moreover, Southside’s partners were the officers and principals of Owners. Significantly, Owners’ acquisition of the building was merely a function of the building’s conversion to cooperative ownership, not a result of a sale to an independent third party.
Thus, even if the property was transferred "subject to” the mortgage, on these facts no inference of waiver can be drawn from Southside’s conveyance to Owners, nor can it be said that Owners is a true stranger to this transaction. To the *742 contrary, under these circumstances, Owners can be deemed the borrower for purposes of the usury laws (compare, Schneider v Phelps, 41 NY2d 238, supra [individual may be considered borrower when loan made to "dummy” corporation]). Accordingly, in this case it is unnecessary to resolve the issue whether the conveyance was subject to the mortgage because even if it was, Owners would not be precluded from asserting a usury defense.
Estoppel in Pais
We next consider plaintiffs estoppel in pais claim. In Payne v Burnham (62 NY 69), a usury case, the Court noted that as a general rule, " 'a party will be concluded from denying his own acts or admissions which were expressly designed to influence the contract of another, and did so influence it, and when such denial will operate to the injury of the latter.’ ” (Id., at 73.)
In usury cases, we have applied the doctrine where the mortgagor executes an estoppel certificate (a statement that there are no setoffs or defenses to the mortgage [see, e.g., Real Property Law § 258, Schedule M, [J 7]) and a third party, relying on the representations, obtains the mortgage (see, Hammelburger v Foursome Inn Corp., 54 NY2d 580; Miller v Zeimer, 111 NY 441; Weyh v Boylan, 85 NY 394; Payne v Burnham, 62 NY 69, supra). The law recognizes that it would be inequitable for the mortgagor to later claim that there is in fact a usury defense and thereby "obtain an unconscientious advantage at the expense of an innocent person” (Weyh v Boylan, 85 NY, at 398, supra).
Although the mortgagor is estopped from claiming usury, the illegal transaction is not entirely purged of its taint. Balancing the competing interests of law and equity, "the innocent assignee is permitted to recover only the amount advanced with interest, rather than to enforce the mortgage for its face amount” (Hammelburger v Foursome Inn Corp., 54 NY2d, at 588, supra; see also, Claflin v Boorum, 122 NY 385, 389; Payne v Burnham, 62 NY, at 74, supra).
In this case, plaintiffs urge a different theory of estoppel in pais, based not on an estoppel certificate but on the borrower’s conduct. Plaintiffs allege that Reichman, a principal of South-side and Owners, was also Herbst’s attorney; that Reichman suggested the interest rate and drafted the documents; and *743 that Herbst relied on his representations that the transaction was legal.
The Appellate Divisions, and the majority of States to consider the issue, have recognized that a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction (see, Abramovitz v Kew Realties Equities, 180 AD2d 568, lv denied 80 NY2d 753 [decided today]; Schaaf v Borsher, 82 AD2d 880 [2d Dept]; Angelo v Brenner, 90 AD2d 131 [3d Dept]; Hammond v Marrano, 88 AD2d 758 [4th Dept]; Annotation, Usury — Borrower’s Initiation, 16 ALR3d 510, 513-516). We endorse such a rule. Otherwise, a borrower could void the transaction, keep the principal, and "achieve a total windfall, at the expense of an innocent person, through his own subterfuge and inequitable deception” (Angelo v Brenner, 90 AD2d 131, 133, supra).
Even assuming plaintiffs’ factual allegations are true, however, their claim must fail. "An indispensable requisite of an estoppel in pais, is that the conduct or representation was intended to, and did, in fact, influence the other party to [her] injury.” (Payne v Burnham, 62 NY, at 73, supra; emphasis added.) Herbst suffered no cognizable injury that should be remedied by equity. To the contrary, for her initial outlay of $150,000, she realized at least $312,000 (defendants claim significantly more) within four years. Any reliance on Reich-man was to her benefit, not detriment.
Indeed, given this concededly usurious loan, Herbst’s estate would be entitled, at most, to recovery of the amount advanced, with legal interest (see, Hammelburger v Foursome Inn Corp., 54 NY2d, at 588, supra; Claflin v Boorum, 122 NY, at 389, supra; Payne v Burnham, 62 NY, at 74, supra). There is no dispute, however, that the estate already received more than those amounts (even excluding Herbst’s profit on the option) and that this action is for usurious interest — the difference between the amount loaned and the face amount of the bond. Equity is not available to effectuate such recovery.
III.
Finally, we consider whether the transaction may be construed as a joint venture, and whether implied covenants of good faith and fair dealing are relevant in this case. These *744 issues were first raised by the Appellate Division itself and are not strenuously pressed by plaintiffs on this appeal.
Usury laws apply only to loans or forbearances, not investments (General Obligations Law § 5-501 [1], [2]). If the transaction is not a loan, "there can be no usury, however unconscionable the contract may be.” (Orvis v Curtiss, 157 NY 657, 661.) We disagree with the Appellate Division’s suggestion that Herbst could be considered a joint venturer of Southside or Owners.
The parties’ agreement refers to Herbst as a "Lender” and a "loan” of $150,000. Southside executed a bond and a mortgage, traditional loan instruments. The mere presence of a unilateral option in favor of Herbst — in lieu of $75,000 of the bond face amount — did not transform the lender into a joint venturer. "|T]f the court can see that the real transaction was the loan or forbearance of money at usurious interest, its plain and imperative duty is to so declare, and to hold the security void.” (Meaker v Fiero, 145 NY 165, 170.) This arrangement, in form and substance, plainly was a loan.
We also disagree with the Appellate Division’s suggestion that defendants could be required to comply with an illegal agreement based on principles of good faith and fair dealing. Apparently, defendants paid Raacke in accordance with the terms of her usurious loan agreement. That defendants chose not to assert a usury defense against Raacke, however, does not preclude them from raising the defense against plaintiffs. Indeed, to follow out plaintiffs’ argument, implied covenants of good faith and fair dealing would require every borrower to comply with an agreement to pay usurious interest. The usury laws take precedence over any such implied covenants.[3]
Plaintiffs’ remaining arguments are similarly without merit.
Accordingly, the order of the Appellate Division should be reversed, with costs, defendants’ motions to dismiss the complaint granted, defendant Owners’ motion granted to have the *745 bond and mortgage surrendered and the lis pendens cancelled, and the certified question answered in the negative.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. There was one written agreement between Raacke and Herbst, as individual lenders, and Southside, as borrower. Raacke and Herbst, however, received separate bonds and mortgages. The documents provided that the two second mortgages would have equal priority.

. Although Owners is a corporation, Supreme Court held that a corporation succeeding to the rights of a party that could have asserted a usury defense likewise may assert the defense, citing Merchants Exch. Natl. Bank v Commercial Warehouse Co. (49 NY 635), and thus Owners’ corporate status was not in itself a bar to the defense. On this appeal, plaintiffs do not contest that holding, and we therefore do not pass on the issue. We note that in any event a corporation may raise the defense when the interest *741 rate is criminally usurious (General Obligations Law § 5-521 [3]), i.e., greater than 25% per annum (Penal Law § 190.40), and that the rate in this case was found to be 28.6%.

. Defendants contend, as a factual matter, that there is no issue of unequal treatment because both lenders received the identical amount— $312,000, plus interest — although by different means. In that we hold, as a matter of law, that implied covenants are not material in the usury context, we need not consider defendants’ argument.