**H. Philipp HUFNAGEL, Plaintiff,**

v.

**James L. GEORGE, et al., Defendant.**

**No. 00 CIV 0331(CM)(GAY).**

United States District Court,
S.D. New York.

Feb. 26, 2001.

James L. George, pro se.

## ORDER VACATING PRIOR DECISION AND DISMISSING COMPLAINT

MCMAHON, District Judge.

On November 3, 2000, this Court entered an order granting summary judgment to plaintiff, directing that defendant repay plaintiff the sum of $250,000 that he had borrowed from plaintiff, together with interest at the rate stipulated in the agreement between the parties—which rate the Court found to be 480%, given the amount of interest stipulated in that Agreement ($100,000) and the duration of the loan (30 days). The Court reached this uncomfortable result after concluding that Sec. 5–501(6)(a) of New York's General Obligations Law exempted loans (other than mortgages) from the sweep of the civil usury statute, with its interest ceiling of 16%. The Court ordered enforcement of the Agreement's provision for attorney's fees to the prevailing party and submitted the matter to The Hon. George A. Yanthis, U.S.M.J., for inquest. No final judgment was entered.

On December 14, 2000, the Court contacted the parties and asked them to brief whether, notwithstanding the Court's earlier decision, the loan was void as a matter of law because the interest rate exceeded the 25% ceiling that defines usury under New York's Penal Law, Sec. 190.40 and 190.42. The relevant provision of the General Obligations Law Sec. 5–501(6)(a) provides: "No law regulating the maximum rate of interest which may be charged, taken or received, *except section 190.40 and section 190.42 of the penal law,* shall apply to any loan or forbearance in the amount of two hundred fifty thousand dollars or more . . . . ." (emphasis added).

When the Court read the statute while preparing the November 3 opinion, I took it to mean that nothing in the General Obligations Law would prevent the People from charging an individual with criminal usury pursuant to the Penal Law if such charge were warranted—not to provide that a loan would automatically be void if the criminal usury ceiling were exceeded. After publication of my November 3 decision in *The New York Law Journal*, I learned of a recent decision of the Bankruptcy Court for this District in which a loan bearing an interest rate slightly greater than the 25% criminal usury ceiling was deemed void as a matter of law. *See In Re Venture Mortgage Fund, L.P.*, 245 B.R. 460 (Bankr.S.D.N.Y.2000). This suggested to me that I had not properly understood the statute and occasioned my request for additional briefing.[1]

On December 20, 2000, after the letter requesting additional briefing went out, I received a Notice of Appeal from my November 3, 1999 Decision and Order, which Defendants filed with the Pro Se Office on or about December 1, 2000. The Second Circuit subsequently has granted Hufnagel's motion to dismiss his appeal without prejudice. *Hufnagel v. George*, 00–9582 (2d Cir. Jan. 31, 2001).

Having reviewed both parties' responses to my December 14 request, and some additional cases, I conclude that the November 3, 2000 decision was in error, and that significant portions thereof must be vacated, the loan from Hufnagel to George declared void, and the complaint dismissed.

General Obligations Law Sec. 5–511 provides that all usurious contracts "shall be

void," and directs (with exceptions having only to do with savings banks, which are not here relevant) that "the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." The New York Court of Appeals has confirmed that the transaction must be deemed void if it is deemed usurious. *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986). It has been held that loans between $250,000 and $2.5 million that bear interest of more than 25% are against public policy and thus void *ab initio*. *Fareri v. Rain's Intern., Ltd.*, 187 A.D.2d 481, 589 N.Y.S.2d 579 (2d Dep't. 1992). This is true whether or not the lender knew that the rate of interest he was charging violated the Penal Law. As Chief Judge Bernstein held in *Venture Mortgage Fund*:

Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance. *The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute. Angelo v. Brenner*, 90 A.D.2d 131, 457 N.Y.S.2d 630, 632 (N.Y.App.Div.1982). Accordingly, the borrower satisfied his prima facie burden of proving usury by showing that the note given to the lender evidences a loan and reserves an illegal rate of interest. . . .

*Venture Mortgage Fund*, 245 B.R. at 473–74 (emphasis added). Here the Court has already found, based on the undisputed facts, that a promissory note, specifically denominated as such, was executed by the

---

1. Plaintiff's briefs on the motion made no mention of this issue, and defendants' presentation—which argued primarily for application of the law of Texas or Oklahoma—consisted of a rather disjointed group of out-of-

context quotations from cases from numerous jurisdictions, and thus did not really make the connection, either. Nonetheless, the misunderstanding was clearly mine.

parties, and that it charged a rate of interest that substantially exceeded 25% per annum. Because equities play no role in a court's determination of whether to apply G.O.L. § 5–551, *see id.* (citing *Estate of Dane v. Hood,* 55 A.D.2d 224, 226, 390 N.Y.S.2d 249, 250 (3d Dep't.1976)), these findings appear to end the inquiry—even though defendant George admitted the debt in the papers he submitted to the Court in opposition to Hufnagel's motion for summary judgment and indicated his willingness to repay Hufnagel $350,000 (but no more).

Hufnagel asserts that he could not be found guilty of criminal usury, because he did not realize that he was making a loan and charging interest—rather, he thought he was participating in a joint venture. *See* Plaintiff's Letter Brief, December 22, 2000, at 1. However, the Court has thoroughly analyzed the documentary evidence in this case and has already found, as a matter of law, that the transaction in question was a loan, not a joint venture. I decline to revisit this determination. Nor is there any basis in this record for concluding that Hufnagel did not know that he was making a loan, given the issuance of a promissory note and the provision of the Agreement that permitted Hufnagel, at his option, to convert the advance into a real joint venture participation by foregoing repayment. *See Hufnagel v. George,* No. 00–CIV–331 (S.D.N.Y. filed Nov. 3, 2000).

Hufnagel also argues that he and George stood in some sort of "special relationship" to each other. He relies on both *Venture Mortgage Fund,* 245 B.R. at 460, and *Seidel v. 18 East 17th Street Owners, Inc.,* 79 N.Y.2d 735, 586 N.Y.S.2d 240, 244, 598 N.E.2d 7 (1992), for the proposition that a borrower is estopped from interposing a usury defense when he had induced a lender's reliance on the legality of the transaction.

New York courts consistently have endorsed the rule that a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction. *Seidel,* 79 N.Y.2d at 741, 586 N.Y.S.2d 240, 598 N.E.2d 7. "Otherwise, a borrower could void the transaction, keep the principal, and 'achieve a total windfall, at the expense of an innocent person, through his own subterfuge and inequitable deception.'" *Id.* at 743, 586 N.Y.S.2d 240, 598 N.E.2d 7. (quoting *Angelo v. Brenner,* 90 A.D.2d 131, 133, 457 N.Y.S.2d 630 (1982)).

However, a "special relationship" is limited to a small class of relationships: attorney-client, fiduciary or trustee, or a longstanding friendship or its equivalent. *Venture Mortgage Fund,* 245 B.R. at 475; *see also Abramovitz v. Kew Realty Equities, Inc.,* 180 A.D.2d 568, 580 N.Y.S.2d 269, 270 (N.Y.App.Div.1992) (finding a special relationship where defendant-borrowers, experienced and sophisticated businessmen and lawyers, took advantage of plaintiff's long-standing friendship and trust in his attorney, one of the defendants, who drafted the original documents and set the financial terms that defendants later claimed were usurious). In addition, it is usually characterized by superior knowledge, experience or sophistication, which enables a borrower to induce the lender to make the loan at a usurious rate. *See id.; Hammond v. Marrano,* 88 A.D.2d 758, 451 N.Y.S.2d 484 (N.Y.App.Div.1982) (finding a special relationship where defendant-borrower had 20 years' experience borrowing and lending money, and was a close friend of the reluctant plaintiff-lender, who lent money only because of the close personal relationship with the defendant); *Seidel,* 79 N.Y.2d at 741, 586 N.Y.S.2d 240, 598 N.E.2d 7 (finding a special relationship where a third party who

was both a principal of the borrower and the lawyer of the lender drafted the documents relied on by the lender); *Angelo v. Brenner*, 90 A.D.2d 131, 457 N.Y.S.2d 630 (3d Dep't 1982) (finding a special relationship where lender, totally inexperienced in business matters, entered into transaction out of sympathy for borrower's financial plight, and relied upon borrower's friendship and superior expertise in setting a rate of interest).

■ Hufnagel and George did not have the sort of "special relationship" that would allow such a usurious rate of interest to stand. In fact, they enjoyed no "special relationship" whatever. Hufnagel argues that he and George had several conversations in the months leading to the transaction, which "laid the foundation for the relationship between the parties, wherein Hufnagel gradually became acquainted, and comfortable, with George's self-professed expertise in such matters." *See* Plaintiff's Letter Brief, December 22, 2000, at 4. Hufnagel asserts that George conceived the entire transaction, and that Hufnagel's involvement was limited to executing the contract and providing the money. *See id.* Yet there was no attorney-client, fiduciary, or long-standing personal relationship between them that could have induced Hufnagel, himself a sophisticated businessman, to rely on George's superior expertise. *See Venture Mortgage Fund*, 245 B.R. at 475. The fact that the borrower suggests the interest rate, standing alone does not relieve the lender of the defense of usury. *See id.* (citing *Pemper v. Reifer*, 264 A.D.2d 625, 695 N.Y.S.2d 555, 557 (N.Y.App.Div.1999)).

Because this was a loan, not a joint venture, and because the "special relationship" exception does not apply, it is subject to the usury laws of New York State, and its void. The following portions of the court's November 3, 2000 decision are hereby vacated: the decretal paragraphs granting summary judgment to plaintiff at pages I and 13 and conclusions of law 4, 5 and 6 at pages 10–11. The findings of fact, conclusions of law 1–3 regarding plaintiff's claim, and the order dismissing defendant's counterclaim are not vacated. Plaintiff's complaint is dismissed. Plaintiff's pending motion for attorneys fees is dismissed as moot. Plaintiff is, of course, free to approach the authorities if he believes himself to be the victim of a crime.

This constitutes the decision and order of the court.