In re VENTURE MORTGAGE FUND, L.P., David Schick, Venture Mortgage Corp. and A & D Trading Group, L.L.C. Debtors,

Theodore Brodie and Atassco, Appellants,

v.

John F. Schmutz, as Chapter 11 Trustee for the estate of Venture Mortgage Fund, L.P. and Aurora Cassirer, as Chapter 11 Trustee for the estate of David Schick and Venture Mortgage Corp., Appellees.

Docket No. 01–5010.

United States Court of Appeals, Second Circuit.

Argued Oct. 17, 2001.

Decided March 1, 2002.

Charles L. Mester, The Law Offices of Charles L. Mester, New York, NY, for Appellants.

Eliot Lauer, Curtis, Mallet Prevost, Colt & Mosle LLP, New York, N.Y. (Lee Stremba, Jenkins & Gilcrist Parker Chapin LLP, on the brief), for Appellee.

Before: MESKILL, JACOBS, Circuit Judges, and LYNCH,* District Judge.

JACOBS, Circuit Judge.

Appellants Theodore Brodie and ATAS-SCO appeal from an order entered in the United States District Court for the Southern District of New York (Berman, *J.*), affirming the order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, *C.J.*), expunging under New York's usury laws unsecured claims filed by appellants against the bankrupt estate of Venture Mortgage Fund, L.P. ("Venture Mortgage"). Venture Mortgage was controlled and operated by David Schick, another debtor in this bankruptcy proceeding; in 1997, Schick pleaded guilty to bank and wire fraud in connection with a Ponzi

---

* The Honorable Gerard E. Lynch of the United States District Court for the Southern District of New York, sitting by designation.

scheme conducted at least in part through Venture Mortgage. ATASSCO is an entity used by Allen Sausen and Leonard Sausen for the purpose of investing with Venture Mortgage and Schick. The record does not indicate what kind of entity ATASSCO may be.

On appeal, appellants emphasize that they were not loan-sharks victimizing Schick, but (to the contrary) were the victims of Schick's Ponzi scheme. They thus argue that the voiding of the loans does not comport with the purposes of New York's usury statutes. Specifically, appellants argue (i) that the usury statutes are designed to protect the poor from their desperation, not to protect Ponzi schemers; (ii) that they were lured into the transactions by a 27% interest rate proposed and dangled before them by the borrower and that they therefore lacked any intent to violate the usury statutes; and (iii) that because Schick drafted the loan documents and was a lawyer whom they had once consulted on an unrelated matter, and in whom they placed trust concerning the legality of the loans, a special relationship existed that estops the trustees (in Schick's shoes) from asserting the defense of usury to void the loans.

We agree with both the bankruptcy court and the district court that the loans at issue, bearing annual interest exceeding 25%, violate the plain language of New York's criminal usury statute. *See* N.Y. Penal Law § 190.40 (McKinney 2001). It has not been contested—here, in the bankruptcy court, or in the district court—that a transaction that violates New York's criminal usury statute is void *ab initio,* either by virtue of § 5–511 of New York's General Obligations Law or (as trustee's counsel argues) by reason of public policy. We affirm because the arguments interposed to defeat voiding lack merit.

The final section of this opinion identifies an unsettled question of New York law that we need not decide because it was never raised by the parties to this appeal. We frame the issue at some length in dictum because (i) the issue is of potential importance in bankruptcy proceedings; (ii) New York courts have not recognized it; and (iii) this opinion might otherwise be misread to settle or foreclose the issue in the federal courts of this Circuit.

**I**

In the early 1990s, Schick confided to appellants a wonderful business opportunity: Schick needed to post "earnest money" in escrow in order to bid on distressed mortgage pools. The mortgage pools, once acquired cheaply at auction, could easily and immediately be resold at substantial profit (so-called "mortgage flip" transactions). To get this "earnest money," Schick solicited funds from appellants (and many others) and assured them that their investments would remain untouched in the escrow accounts, and would be returned to them "risk-free" with interest exceeding 20% per annum. On that basis, Brodie loaned $500,000 to Venture Mortgage in August 1992 and ATASSCO, along with several other investors, loaned $2.75 million in July 1995. Venture Mortgage punctiliously met all of its obligations on these loan transactions at the promised interest rates.

Pleased and enthusiastic, appellants were soon importuning Schick for new opportunities to make more such loans. After a while, Schick yielded to his victims and agreed to accept, on behalf of Venture Mortgage, three loans at an annual interest rate of 27%: in December 1995, Brodie "rolled over" $200,000 in principal from his earlier loan, and ATASSCO loaned $1.1 million in new funds; in February 1996, ATTASCO loaned an additional $850,000.

These three loans are the transactions voided by the bankruptcy court.

In May 1996, several swindled creditors filed an involuntary Chapter 11 petition against Schick and the various entities controlled by Schick. Appellants filed timely claims against the respective bankruptcy estates to recover on their loans. The bankruptcy trustees filed motions to expunge appellants' claims on the grounds of usury. The bankruptcy court granted the motions to expunge, and the district court affirmed.

## II

■ Appellants argue that the legislative purpose of New York's usury statutes is " 'to protect desperately poor people from the consequences of their own desperation.' " *Seidel v. 18 East 17th Street Owners, Inc.*, 79 N.Y.2d 735, 586 N.Y.S.2d 240, 598 N.E.2d 7, 9 (1992) (quoting *Schneider v. Phelps*, 41 N.Y.2d 238, 243, 391 N.Y.S.2d 568, 359 N.E.2d 1361 (1977)). Although Schick, enriched by large fraudulent loans, cannot be described as desperately poor, and although appellants cannot be described as loan-sharks (and are, if anything, the victims of the transactions), the New York usury laws do not recognize these distinctions. "It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir.1999) (internal citations omitted). Therefore, the particular distinctions that the appellants draw furnish no ground for reversing the order of expungement.

■ Appellants also argue that, since they were lured by the borrower into entering loan transactions that (notwithstanding the usurious rate of interest) were in fact grossly disadvantageous to them because Schick planned to steal the principal, they lacked any intent to violate the usury statute. However, the application of New York's usury statutes does not depend upon a finding of intent. "A loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws." *Hammond v. Marrano*, 88 A.D.2d 758, 451 N.Y.S.2d 484, 485 (App. Div. 4th Dep't 1982).

■ Finally, appellants argue that the trustees are estopped from asserting usury as a defense to these loans. The New York Court of Appeals has "recognized that a borrower may be estopped from interposing a usury defense when, through a special relationship with a lender, the borrower induces reliance on the legality of the transaction." *Seidel*, 586 N.Y.S.2d 240, 598 N.E.2d at 11. The basis for the estoppel claim is that Schick drafted the loan documents, was a lawyer whom Appellants had once consulted on an unrelated matter, and was a person Appellants trusted to assure the legal enforceability of the loans. We agree with the district court, however, that the bankruptcy court did not clearly err in finding that (i) the record discloses no special relationship of the kind contemplated in *Seidel*, 586 N.Y.S.2d 240, 598 N.E.2d at 10–12; [1] and (ii) even if there were such a special relationship, neither Brodie nor ATASSCO re-

---

1. The bankruptcy court found that "the only 'special relationship' they shared was the symbiotic one existing between an investor with a lot of cash and a deal maker who could apparently put it to good and very profitable uses." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 477 (Bankr.S.D.N.Y.2000).

lied on Schick for any advice that the loan transactions conformed to law.[2]

We therefore affirm.

## III

A background assumption of our ruling is that a transaction punishable as criminal usury is void under New York law. Because this assumption is unchallenged in this case (on appeal, in the Southern District, and in the bankruptcy court), we need not decide an open question under New York law: whether a loan is void if it violates New York's criminal usury statute without violating New York's civil usury statute. That open question needs to be flagged because (i) it is likely to arise again in the bankruptcy courts; (ii) the state courts have evidently not noticed it; and (iii) we need to emphasize that our ruling on this appeal reflects no implicit resolution of it.

The following is therefore dictum.

It appears from a close reading of the complex and cross-referencing statutes that compose New York's usury law that the voiding provision only operates to void loans that violate the *civil* usury statute—a statute that by its terms applies only to loans of less than $250,000 (with interest in excess of 16%)—and might not operate to void a loan of $250,000 or greater even if such loan's annual interest rate exceeds 25% and is therefore criminally usurious. *See* N.Y. Gen. Oblig. Law §§ 5–501, 5–511 (McKinney 2001); N.Y. Banking Law § 14–a (McKinney 2001).

Nothing we see in the criminal usury statute, N.Y. Penal Law § 190.40 (McKinney 2001), provides for voiding, and it is unclear whether the Legislature intended that criminally usurious loans of $250,000 or greater be voided. On the one hand, it may be expected (as the parties to this appeal evidently assume) that one who commits criminal usury should not be preferred (and be able to collect) over the usurer who charges a rate of interest that is not criminal. On the other hand, the larger the loan transaction, the less likely it is that the borrower needs or deserves financial protection; moreover, the greater the amount of forfeiture, the more unsettling it becomes to financial arrangements. As the New York courts have recognized, the consequences to a lender of voiding a usurious loan transaction are harsh: "the borrower is relieved of all further payment—not only interest but also outstanding principal, and any mortgages securing payment are cancelled. In effect, the borrower can simply keep the borrowed funds and walk away from the agreement." *Seidel,* 586 N.Y.S.2d 240, 598 N.E.2d at 9; *accord Rossi v. Hood (ex rel. Estate of Dane),* 55 A.D.2d 224, 390 N.Y.S.2d 249, 250 (App. Div. Third Dep't 1976) ("New York's usury laws are harsh, and courts have been reluctant to extend them beyond cases that fall squarely under the statutes."). Presumably for these reasons, no New York usury law prohibits, voids, or regulates transactions over $2.5 million, a financial plane above which all players apparently are deemed to be able to fend for themselves.[3] *See* § 5–501(6)(b).

---

**2.** The bankruptcy court found that "In truth, the overriding—indeed the only—impetus impelling [Appellants] to invest with Schick was the promise of future riches that seemed too good to be true." · *In re Venture Mortgage,* 245 B.R. at 478.

**3.** Section 5–521 of the New York General Obligations Law provides that no corporation may interpose a defense of usury in any action except "a defense of criminal usury." § 5–521(3). If the effect of a successful defense based on criminal usury is voiding of the loan, this statute would seem to imply that a loan in violation of the penal law is void *ab initio;* if, however, a corporation's successful defense based on criminal usury results mere-

The statutory provisions that bear upon whether a criminally usurious loan is void (without answering the question) are set forth in the margin.[4]

The idea that criminally usurious loans might not be void was raised in *Hufnagel v. George*, 135 F.Supp.2d 406 (S.D.N.Y. 2001) (McMahon, *J.*). Judge McMahon ultimately rejected the idea, however, chiefly because the bankruptcy court opinion reviewed on the present appeal seemed to decide the question implicitly. *Id.* at 407. *Hufnagel* also cited public policy as a rea-

son for voiding such loans. *Id.* For that proposition, however, *Hufnagel* relied on *Fareri v. Rain's International, Ltd.*, 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div.2d Dep't 1992), which, though it voided the criminally usurious loan, did not consider the question raised here and apparently did not recognize it. *Fareri* simply relied on language from *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517, 521 (1986), which itself involved a loan that was less than $250,000 and violated the civil usury statute only. Contrary to *Hufnagel*, it is an open ques-

ly in a cancellation of the interest obligation but not the obligation to pay principal, or in a revised obligation to pay a non-usurious rate, then this provision does not bear upon the open question.

4. New York's civil usury statute is found in § 5–501 of the New York General Obligations Law:

1. The rate of interest ... upon the loan ... of any money ..., *except as provided in subdivision[ ] ... six of this section ...,* shall be [*sixteen*] per centum per annum....

2. No person ... shall ... charge, take or receive any money ... as interest on the loan ... of any money ... at a rate exceeding the rate above prescribed.... (Emphases added).

*See* N.Y. Banking Law § 14–a(1) (supplying the 16% rate).

New York's criminal usury statute is found in § 190.40 of the New York Penal Law:

A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money ... as interest on the loan ... of any money ..., at a rate exceeding *twenty-five* per centum per annum or the equivalent rate for a longer or shorter period. (Emphasis added).

The voidance mechanism is as follows:

All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, ... whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, *any greater sum, or greater value,* for the loan ... of

any money ..., *than is prescribed in section 5–501,* shall be void....

§ 5–511(1) (emphases added). Thus, § 5–511 voids a loan that violates the civil usury statute (§ 5–501) but says nothing about a loan that violates the criminal usury statute. The criminal usury statute, by its terms, does not expressly void a loan that exceeds its maximum rate. So there seems to be no specific statutory authority for voiding a loan that violates the criminal usury statute without violating the civil usury statute.

Subsection six of § 5–501 specifies exceptions to New York's usury law:

a. *No law* regulating the maximum rate of interest which may be charged, taken or received, *except section 190.40 ... of the penal law, shall apply to any loan ...* in the amount *of two hundred fifty thousand dollars or more ....*

b. *No law* regulating the maximum rate of interest which may be charged, taken or received, *including section 190.40 ... of the penal law, shall apply to any loan ...* in the amount *of two million five hundred thousand dollars or more. ...*

§ 5–501(6) (emphases added).

Under New York's statutory framework, therefore, Brodie's $200,000 loan violated both the civil and the criminal usury statutes, while ATASSCO's loans (of $1.1 million and $850,000) violated only the criminal usury statute, since, pursuant to § 5–501(6)(a), these loans, which exceeded $250,000, were for that reason outside the civil usury statute. It is an open question, therefore, whether there is any authority for voiding the two ATASSCO loans.

tion under New York law whether a crimi-
nally usurious loan is void.