18

Gary LaBARBERA, Lawrence Kudla, Thomas Gesualdi, Paul Gattus, Theodore King, Chester Broman, Frank Finkel and Joseph Ferrara, as Trustees and Fiduciaries of the Local 282 Welfare, Pension, Annuity Job Training, and Vacation and Sick Leave Trust Funds, Plaintiffs–Appellants–Cross–Appellees,

v.

A. MORRISON TRUCKING, INC., Defendant–Appellee–Cross–Appellant.

Nos. 04–5927–cv (L), 04–5928–cv (xap).

United States Court of Appeals, Second Circuit.

July 20, 2006.

Eugene S. Friedman, Friedman & Wolf, New York, NY, for Appellants.

Ambrose W. Wotorson, Law Office of Ambrose Wotorson, Brooklyn, NY, for Appellee.

Present: ROSEMARY S. POOLER, ROBERT A. KATZMANN and B.D. PARKER, Circuit Judges.

20

## SUMMARY ORDER

Plaintiffs, who are trustees of ERISA trust funds, appeal from the district court's judgment insofar as it (1) denied them recovery of contributions from the defendant employer for the period from December 1994 through June 1999; (2) limited the interest payable on delinquent contributions after that date to six percent; and (3) limited the funds' liquidated damages to 20% of unpaid contributions. Defendant employer cross-appeals from the district court's award of delinquent contributions from July 1999 through July 2001. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal and hold as follows.

■ Although the trust agreement grants the trustees the sole authority to settle claims in favor of the various trust fund plaintiffs, the district court held that an attorney, who sometimes represented the plaintiff funds and sometimes the union; a union official; and a funds clerical employee had either actual or apparent authority to settle delinquent contributions on behalf of the funds within an action between the union and the defendant employer. As to actual authority, this finding was clear error because the trust agreements vest settlement authority solely in the trustees and allows delegation of this power only to individual trustees or groups of trustees. The district court also erred by finding apparent authority culminating in an accord and satisfaction. Apparent authority to negotiate on behalf of a principal can only exist based on the acts of the principal, in this case the trustees of the funds. *See Trustees of the UIU Health and Welfare Fund v. New York Flame Proofing Co.*, 828 F.2d 79, 83–84 (2d Cir. 1987). There is no evidence in the record that the trustees took action that would cause the employer to believe that the union was negotiating on the funds' behalf.

Instead, the district court's conclusion of apparent authority rested upon the acts of the purported agents, which is not permissible. *See id.* Moreover, to the extent the district court relied on an attorney's purported admission that he represented both the union and the funds, the attorney's alleged statement was taken out of context. The attorney, who spoke prior to the employer's initiation of litigation against the union, said that he sometimes represented both the funds and the union and sometimes represented one or the other.

■ The district court also relied on the funds' deposit of two checks, the first marked as "Partial Payment on A/C of Settlement" and the second marked as "Balance of Trust Fund Payment Per Settlement Agreement" as evidence of an accord and satisfaction between the union and the trust funds concerning contributions due to the funds for the period from May 1997 through June 1999. As a preliminary matter, the language written on the check was, at best, ambiguous because the only litigation currently pending was between the union and the employer, and the funds had not yet made a claim for delinquent contributions and certainly had not entered into a settlement agreement. Thus, the language is as easily, if not better read, as referring to a settlement between the union and the employer rather than a three-way settlement of litigation that did not exist. In addition, the employer's attorney acknowledged within days of the two checks that the amount owing for the period between May 1997 and June 1999 was still disputed. Moreover, as noted previously, only the trustees themselves had the authority to compromise a claim that the funds possessed, and there is no evidence that they were in any way involved in negotiating the two checks. Therefore, the conclusion that an

accord and satisfaction had been reached was clear error.

■ The district court also rejected claims for contributions between December 1994 and June 1999 because the trustees failed to account for the two settlement payments and for certain earlier good faith payments that the employer made to the trust funds at the behest of the union. When a fund seeks delinquent contributions, it has the initial burden of showing that the employer's records are inadequate. *Combs v. King,* 764 F.2d 818, 826–27 (11th Cir.1985). If it makes this showing, it is entitled to damages unless the employer offers proof of the exact hours of work performed or evidence that "negative[s] the reasonableness of the inference to be drawn from the [funds'] evidence." *Id.* at 826–27; *see also Brick Masons Pension Trust v. Indus. Fence & Supply,* 839 F.2d 1333, 1338–39 (9th Cir. 1988); *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 696 (6th Cir.1994). The evidence that the Funds offered related only to the inadequacy of the employers' records and was uncontroverted. The Funds then engaged in a mathematical calculation mandated by the trust agreement in determining damages. This calculation, too, has not been undermined. What remains unclear is whether the funds will receive a windfall if the good faith payments and settlement payments are not credited against the recovery otherwise due the funds. We therefore vacate the district court's judgment insofar as it denies any recovery to the funds for the period between 1994 and 1999, and remand to allow the parties to make evidentiary submissions and legal argument to the district court on (1) whether the underpayments identified in the audit by a mathematical formula necessarily overlap with the underpayments identified by the union through its shop steward reports, and (2) whether a formula can be devised by which the various payments can be credited as of the date made and the underpayments recalculated accordingly.

■ The district court incorrectly limited the funds' interest award to six percent. The trust agreements provide that the applicable rate of interest is "the rate specified in Section 5–501 of the [New York] General Obligations Law." That section provides that "[t]he rate of interest, as computed pursuant to this title ... shall be six per centum per annum unless a different rate of interest is prescribed in section fourteen-a of the banking law." N.Y. Gen. Oblig. L. § 5–501(1). Section 14–a states that "[t]he maximum rate of interest provided for in section 5–501 of the general obligations law shall be sixteen per centum per annum." N.Y. Bank. L. § 14–a(1). Further New York Banking Law § 14–a(5) states:

> Whenever reference is made ... in any ... law, contract or document to the rate of interest prescribed or to be prescribed ... pursuant to this section or any former section fourteen-a of this chapter, such reference shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.

Thus, Section 14–a(5) makes it clear that the "maximum" rate of interest referenced in Section 14–a(1) is also the "prescribed" rate of interest for purposes of New York General Obligations Law § 5–501(a). Cases from this court and the New York Court of Appeals reinforce that conclusion. *See Seidel v. 18 E. 17th St. Owners, Inc.,* 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 598 N.E.2d 7 (1992) ("In its present form, the usury statute provides: 'No person or corporation shall, directly or indirectly, charge, take or receive any money ... on the loan or forbearance of any money ... at a rate exceeding' 16% per annum (Gen-

22

eral Obligations Law § 5–501[2]; Banking Law § 14–a[1] ).”); *Trans World Airlines, Inc., v. Hughes,* 449 F.2d 51, 80–81 (2d Cir.1971) (holding that the six percent rate prevails only if Section 14–a[1] prescribes no higher maximum rate), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Therefore, on remand the district court should calculate the interest on delinquent contributions at 16%.

■ ERISA provides that a trust fund receive the higher of 20% of unpaid contributions or a doubling of the interest award as liquidated damages. 29 U.S.C. § 1132(g)(2). The trust agreements in this case tracked the statutory language. However, the district court awarded 20% of unpaid contributions without considering whether doubling the interest recovery would provide a greater return to the funds. On remand, the court should determine which calculation produces the greater recovery and award that amount as liquidated damages.

We reject the employer's cross-appeal. The employer contends that the district court should have found the funds' methodology inadequate for the period between July 1999 and July 2001. The district court's finding that the $56,000 in good faith payments was to be credited to the period of December 1994 through April 1997 is not clearly erroneous, and the shop steward reports were not used in determining the employer's delinquent contributions.

We therefore affirm the judgment of the district court insofar as it determined that the funds were entitled to delinquent contributions for July 1999 through July 2001 and otherwise vacate and remand.