Phantom Advance LLC v Top House Props. & Invs. LLC (2025 NY Slip Op 50007(U))

[*1]

Phantom Advance LLC v Top House Props. & Invs. LLC

2025 NY Slip Op 50007(U)

Decided on January 6, 2025

Supreme Court, Kings County

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 6, 2025
Supreme Court, Kings County

Phantom Advance LLC, Plaintiff,

against
Top House Properties and Investments LLC and ROBERTO LOMBARDI BARRETO, Defendant(s).

Index No. 517517/2023

Attorneys for Plaintiff
David J. Pretter
PRETTER LAW PLLC
2102 Avenue Z Suite 201
Brooklyn, NY 11235
(718) 339-0856
Isaac Hirsch Greenfield
Law offices of Isaac H. Greenfield, PLLC
2 Executive Blvd., Ste. 305
Suffern, NY 10901
(845) 596-8542

Attorney for Defendants
Amos Weinberg
49 Somerset Dr. S.
Great Neck, NY 11020
(516) 829-3900

Francois A. Rivera, J.

Recitation in accordance with CPLR 2219 (a) of the papers considered on the notice of motion jointly filed on April 30, 2024, under motion sequence number one, by Top House Properties and Investments LLC (hereinafter the LLC defendant) and Roberto Lombardi Barreto (hereinafter the individual defendant) (hereinafter collectively the defendants) for an order pursuant to CPLR 3212 dismissing the complaint of Phantom Advance LLC (hereinafter [*2]plaintiff) on the grounds that the action seeks to enforce a criminally usurious loan. The motion is opposed.
-Notice of motion
-Affirmation in support
Exhibits A
-Memorandum of law in support
-Statement of material facts
-Affirmation in opposition
Exhibits A-D
-Affidavit in opposition
Exhibit 1
-Memorandum of law in opposition
-Counter Statement of material facts
BACKGROUND
On June 15, 2023, the plaintiff commenced the instant action by filing a summons and verified complaint (hereinafter the commencement papers) with the Kings County Clerk's office (KCCO). The verified complaint alleges twenty-three allegations of fact in support of two causes of action, namely, breach of contract and breach of a personal guarantee.
On July 11, 2023, the defendants interposed and filed a joint answer with the KCCO. As relevant to the instant motion, the second affirmative defense alleges that the contract (hereinafter the agreement), which is the subject of the verified complaint, was criminally usurious. 
The verified complaint alleges the following salient facts. Pursuant to a future receivable purchase agreement (hereinafter the agreement) and personal guarantee dated December 9, 2022, the plaintiff purchased from the LLC defendant its future accounts receivable having a face value of $74,949.00 for the purchase price of $52,500.00. 
Pursuant to the agreement, the LLC defendant, sold, assigned, and transferred to the plaintiff a percentage of its future sales proceeds, up to an aggregate amount of $74,949.00. Pursuant to the agreement, the individual defendant personally guaranteed all amounts owed to the plaintiff from the LLC defendant, upon a breach in their performance.
Initially, the LLC defendant met its obligation under the agreement, however, on or about December 23, 2022, it breached the agreement by failing to perform its obligations under the terms of the agreement, by intentionally impeding and depriving plaintiff of its weekly ACH withdrawals from the specified bank account all while still conducting regular business operations. The LLC defendant has paid a total of $4,996.66 to plaintiff leaving a balance due and owing the amount of $69,953.24. In addition, pursuant to appendix A of the agreement, the LLC defendant incurred a default fee in the amount of $13,990.655 (which, upon the occurrence of an event of default, is calculated as twenty percent (20%) of the funded amount/purchase price of the purchased amount of future receivables to be applied to the balance owed to plaintiff). 
Despite due demand, the LLC defendant and the individual defendant have failed to pay the amounts due and owing to the plaintiff. There remains a balance due and owing to the plaintiff on the agreement in the amount of $83,943.89 plus interest from December 23, 2022, [*3]costs, disbursements, and attorney fees.
MOTION PAPERS
The defendants' motion papers consist of a notice of motion, an affirmation of its counsel, a memorandum of law, a statement of material facts and an annexed exhibit labeled A. Exhibit A is a copy of the agreement. In accordance with CPLR 2214 (c), the affirmation of defendant's counsel referred to and gave the NYSCEF document numbers of the verified complaint and the defendants' answer.
The plaintiff's opposition papers consist of an affirmation of its counsel, a response to defendants' statement of material facts, and an annexed document labeled exhibit one. Exhibit one is denominated as a balance transfer form.
LAW AND APPLICATION
It is well established that summary judgment may be granted only when it is clear that no triable issue of fact exists (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The burden is upon the moving party to make a prima facie showing that he or she is entitled to summary judgment as a matter of law by presenting evidence in admissible form demonstrating the absence of any material issue facts (Giuffrida v Citibank, 100 NY2d 72, 81 [2003]).
A failure to make that showing requires the denial of the summary judgment motion, "regardless of the adequacy of the opposing papers" (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]). If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact (Alvarez, 68 NY2d at 324).
Pursuant to CPLR 3212 (b), a court will grant a motion for summary judgment upon a determination that the movant's papers justify holding, as a matter of law, that there is no defense to the cause of action or that the cause of action or defense has no merit. Furthermore, all the evidence must be viewed in the light most favorable to the opponent of the motion (Marine Midland Bank v Dino & Artie's Automatic Transmission Co., 168 AD2d 610, 610 [2d Dept 1990]).
"New York usury law is composed of General Obligations Law §§ 5-501, 5-511, 5-521; Banking Law § 14-a (1); and Penal Law § 190.40" (Adar Bays, LLC v GeneSYS ID, Inc., 37 NY3d 320, 326 [2021]). "Together, the statutes establish that loans of less than $250,000 to individuals cannot exceed a 16% annual rate, loans between $250,000 and $2.5 million cannot exceed 25%, the criminal usury rate, and loans of $2.5 million or more are not subject to the usury laws" (id.). "More specifically, the General Obligations Law and Banking Law provide that the maximum rate of interest upon a 'loan or forbearance of any money, goods, or things' shall be 16% per annum unless otherwise provided by law, and '[n]o person or corporation shall, directly or indirectly, charge, take or receive any money, goods, or things in action as interest' at a rate exceeding 16% (id. [internal citations omitted], quoting General Obligations Law §§ 5-501 [1], [2], and citing Banking Law § 14-a [1]). Furthermore, "a lender commits a class E felony when, without other legal authorization, the lender, 'knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding [25%] per annum or the equivalent rate for a longer or shorter period'" (id., quoting Penal Law § 190.40). 
"Although, the defense of civil usury is not available to limited liability companies, this [*4]bar does not preclude a limited liability company borrower from raising the defense of 'criminal usury' (i.e., interest over 25%) in a civil action" (Powercap Partners LLC v Beaux Equities LLC et al, 77 Misc 3d 1221[A], 2023 NY Slip Op. 50013[U], *6 [Sup Ct, Kings County 2023], citing Limited Liability Company Law § 1104 [c]). "However, it may only be raised as an affirmative defense and may not be asserted as a direct cause of action against the lender" (id.).
Criminal usury occurs when a person "knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum" (Penal Law § 190.40; see Venables v Sagona, 85 AD3d 904, 905 [2d Dept 2011]). "A usurious contract is void and relieves the borrower of the obligation to repay principal and interest thereon" (Venables, 85 AD3d at 905, see General Obligations Law § 5-511; Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 740 [1992]). Indeed, where usury has occurred, "the borrower can simply keep the borrowed funds and walk away from the agreement" (Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 740 [1992]). 
This harsh penalty has resulted in a presumption against a finding of usury, such that a person seeking to establish usury in a transaction bears the heavy burden of proving it by clear and convincing evidence (Adar Bays, LLC v GeneSYS ID, Inc., 37 NY3d 320, 343 [2021], citing Freitas v Geddes Sav. & Loan Ass'n., 63 NY2d 254, 260-261 [1984]).
The defendants have annexed as exhibit A the agreement which the plaintiff claims that the defendants breached. There is no dispute that Roberto Lombardi Barreto signed the agreement on behalf of Top House Properties and Investments LLC and that he also executed a personal guarantee. According to the agreement, the LLC defendant sold the plaintiff $74,949.90 of its future receivables for a purchase price of $52,500.00. The future receivables were to be debited from a designated bank account of the LLC defendant at the rate of $4,996.99 weekly until the full agreed amount purchased was recovered. The defendants contend that the terms of the agreement establish that it is in fact a criminally usurious loan and not a purchase agreement of the LLC defendant's future receivables. The affirmation of plaintiff's counsel authenticated the agreement annexed as exhibit A to defendants' motion. 
"The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be" (LG Funding, LLC v United Senior Props. of Olathe, LLC, 181 AD3d 664, 665 [2d Dept 2020]). "To determine whether a transaction constitutes a usurious loan, it 'must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it" (id., quoting Abir v Malky, Inc., 59 AD3d 646, 649 [2d Dept 2009], quoting Ujueta v Euro-Quest Corp., 29 AD3d 895, 895 [2d Dept 2006] [internal quotation marks omitted]). "Unless a principal sum advanced is repayable absolutely, the transaction is not a loan" (LG Funding, LLC, 181 AD3d at 666).
"Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (id.). "[A] loan that is criminally usurious is void" (Kingsize Entertainment, LLC v Martino, 155 AD3d 856, 856 [2d Dept 2017]; see Adar Bays, LLC., 37 NY3d 320, 332-333 [2021]).
Here, the defendants established clearly and convincingly that the agreement constituted a criminally usurious loan. The agreement and addendums thereto provided, among other things, that, in exchange for the purchase, the LLC defendant was obligated to authorize the plaintiff to [*5]automatically debit $4,996.66 weekly from the LLC defendant's bank account. As set forth below, the plaintiff was under no obligation to reconcile the payments to a percentage amount of the LLC defendant's sales. 
Although, the agreement contained a reconciliation provision, the agreement made clear that the reconciliation provision was at best a courtesy and not an obligation. Paragraph (1) (d) of the addendum states as follows:
"The Merchant specifically acknowledges that: (i) the Daily Payment and the potential reconciliation discussed above are being provided to the Merchant as a courtesy, and that PA LLC, is under no obligation to provide same, and (ii) if the Merchant fails to furnish the requested documentation within five (5) business days following the end of a calendar month, then PA LLC, shall not effectuate the reconciliation discussed above."
Page five of the agreement under the heading Security Agreement and Guaranty states the following:
II. GUARANTY
Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to PA LLC, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.
Under these provisions of the agreement and addendum the plaintiff was entitled to collect the full uncollected purchase amount plus all fees due under the agreement in the event of the LLC defendant's default by changing their payment processing arrangements or by declaring bankruptcy. 
Together, these terms established that the agreement was a loan, pursuant to which repayment was absolute, rather than a purchase of future receipts under which repayment was contingent upon the LLC defendant's actual sales (see Davis v Richmond Capital Group, LLC, 194 AD3d 516, 517 [1st Dept 2021]; LG Funding, LLC v United Senior Props. of Olathe, LLC, 181 AD3d 664, 666 [2d Dept 2020]). Here, the existence of a loan is apparent from the face of the agreement as a matter of law (cf. Kapitus Servicing, Inc. v Point Blank Constr., Inc., 221 AD3d 532 [1st Dept 2023]). No term or condition of the agreement is ambiguous as to whether plaintiff's right to repayment was contingent or absolute.
Under the agreement, the total paid to the LLC defendant was $52,500, less startup fees, for which the LLC defendant had to pay plaintiff back $74,950, by a weekly payment of $4,996.66 per week. The LLC defendant receiving gross proceeds from the plaintiff of $52,500 and having to pay back $74,950 leaves a difference of $22,450, which is the interest that the LLC defendant had to pay on the $52,500. If this amount of interest was to be paid over a year it would amount to an interest rate of 43% per year ($22,450 divided by $52,500). However, since [*6]it had to be paid back within 15 weeks, the rate of interest is even greater than 43%. Thus, the rate of interest clearly exceeded the criminally usurious threshold of 25% (see Penal Law § 190.40).
In opposition to the motion, the plaintiff submitted an affirmation of its counsel. Plaintiff's counsel averred, contrary to the plain language of the agreement, that the defendants had a right to reconciliation and that bankruptcy did not constitute a default under the agreement. In sum, the plaintiff's opposition papers did not raise a triable issue of fact. 
CONCLUSION
The motion by the defendants Top House Properties and Investments LLC and Roberto Lombardi Barreto for an order pursuant to CPLR 3212 dismissing the complaint of Phantom Advance LLC on the grounds that the action seeks to enforce a criminally usurious loan is granted. 
The foregoing constitutes the decision and order of this Court.
ENTER:
J.S.C.