SUMMARY ORDER
Plaintiff-Appellant, as Chairman of the Joint Industry Board of the Electrical Industry (“Joint Board”), appeals from the March 25, 2008 decision of the United States District Court for the Eastern District of New York (Dora Irizarry, J.), granting the Joint Board default judgment against Empire Electrical Contractors, Inc. (“Empire”) but awarding the Joint Board less than the full damages that it requested. The district court order adopted in full the September 13, 2007 Report and Recommendation of Magistrate Judge Viktor V. Pohorelsky, which refused on evidentiary grounds to award the Joint Board damages for Empire’s unpaid 401(k) contributions and for lost interest income on Empire’s late-paid 401 (k) contributions. We assume the parties’ familiarity with the underlying facts, procedural history, and specification of the issues on appeal.
As described in the declaration of Joint Board administrator Kevin Duffy, the 401(k) contributions still owed by Empire are made up of two components. First, there are Employer Contributions: “[E]m-ployers are ... required to remit contributions to the 401 (k) Plan on behalf of all covered employees ... in an amount equal to each employees’ [sic] FICA tax.” App. 284. Second, there are Employee Elective Contributions: “[EJmployers are required to deduct an employee-specified percentage from the weekly wages of each eligible employee covered by the collective bargaining agreement with the Union and to remit such amounts ... to the 401 (k) Plan.” Id. Before the district court, the Joint Board attempted to prove the amount owed for Employer Contributions and Employee Elective Contributions during weeks 39-50 by extrapolating from a payroll report for week 38. The Joint Board has previously used this valuation *53 method successfully based on similar evidence, see, e.g., Jacobson v. Decora Elec., Co., No. 05-CV-4812, 2007 WL 2071563, at *3 (E.D.N.Y. June 5, 2007), but the district court rejected the Joint Board’s evidence in this case, see Jacobson v. Empire Elec. Contractors, Inc., No. 05-cv-1713, 2008 WL 819948, at *3-*4 (E.D.N.Y. Mar.25, 2008).
We believe that the district court gave an unduly strict assessment of the evidence concerning the unpaid 401 (k) contributions, given that the court determined that an evidentiary hearing was not necessary in this case to reasonably assess damages, see Fed.R.Civ.P. 55(b)(2); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir.1989), and because the court credited the Joint Board’s allegations that Empire’s payroll records were inadequate, see Empire, 2008 WL 819948, at *3, thus entitling the Joint Board to damages reasonably inferred from the evidence it presented, see, e.g., Combs v. King, 764 F.2d 818, 826-27 (11th Cir.1985).[1] On review, the evidence presented by the Joint Board appears sufficient to allow the district court to calculate the damages for unpaid 401 (k) contributions “with reasonable certainty.” Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.1999).
With respect to the Employer Contributions owed by Empire, we note that these damages are entirely ascertainable based on the payroll records for weeks 39-50, records credited by the Magistrate Judge when determining damages for unpaid ERISA contributions. Specifically, the Employer Contributions may be calculated by multiplying the total gross wages for weeks 39-50 by the Federal Insurance Contributions Act (FICA) and Medicare tax rate of 7.65%, see 26 U.S.C. § 3111(a)-(b).[2] Given that the district court credited the records for weeks 39-50 by adopting in full the Magistrate Judge’s Report and Recommendation, this evidence should provide a sufficient basis for calculating the damages for unpaid Employer Contributions. We therefore vacate the district court’s judgment with respect to damages for unpaid Employer Contributions and remand for reconsideration of these damages.
While calculating the damages for unpaid Employee Elective Contributions is a more complicated endeavor, the record evidence also appears sufficient to reasonably ascertain this measure of damages. As an initial matter, we cannot agree with the district court’s assertion that it had “no way of verifying the week 38 contribution figures” for the purpose of extrapolating the unpaid Employee Elective Contributions from those figures. See Jacobson, 2008 WL 819948, at *4. While the Magistrate Judge faulted the Joint Board for *54 failing to submit an affidavit by a bookkeeper or other custodian of records, the Joint Board responded to this concern before the district court by submitting the declaration of Kevin Duffy, a Joint Board administrator whose department “monitors contributions remitted to the Joint Board by contributing employers, including Empire.” App. 282-83. The district court acknowledged the Duffy Declaration and the court’s ability to consider such additional evidence, but it did not directly address why the Duffy Declaration was not adequate to address the Magistrate Judge’s concerns.
The reason for the district court’s hesitation regarding the Duffy Declaration is not immediately apparent. “The bar for authentication of evidence is not particularly high.” United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir.2007). “Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity,” a standard “of ‘reasonable likelihood,’” that we have described as “ ‘minimal.’ ” Id (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir.2004)). The district court does criticize the Joint Board for failing to provide documentation from Putnam Investments (“Putnam”), the third-party record-keeper and investment manager to which Empire was bound to submit its 401(k) plan reports. But Putnam is not the only entity that may properly lay a foundation for the week 38 report. Rather,
[documents may properly be admitted ... as business records even though they are the records of a business entity other than one of the parties, and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that owns and prepared them. Further, there is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity’s regular practice to get information from such a person.
Saks Int’l, Inc. v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir.1987) (citations omitted); see also United States v. Grayson, 166 F.2d 863, 869 (2d Cir.1948) (Learned Hand, ,/.). The Duffy Declaration indicates that it was the Joint Board’s regular practice to rely on the 401(k) report information submitted to Putnam. Thus, an affidavit from Putnam itself is not obviously necessary to demonstrate the admissibility of the week 38 report. See Saks Int’l, Inc., 817 F.2d at 1013-14.
Moreover, the week 38 report finds corroboration in the actual amount of unpaid Employer Contributions due for weeks SO-SO. The $1,054.76 of unpaid Employer Contributions for week 38 alone is comparable to the actual unpaid Employer Contributions of approximately $1,100 per week as reflected in the reports from weeks 39-50. The fact that the Employer Contributions from week 38 closely approximate those actually due for weeks SO-SO supports the determination that the week 38 report also provides a reasonable basis for approximating the Employee Elective Contributions due for weeks 39-50. For all of the foregoing reasons, we vacate the district court’s ruling with respect to damages for unpaid Employee Elective Contributions and remand for the district court to reconsider the Joint Board’s evidence and, if appropriate, to award a reasonable amount of damages to the Joint Board for the unpaid Employee Elective Contributions.
On remand, the district court has a number of options available to it for calculating the Employee Elective Contributions award. Because Empire failed to provide the actual amount of Employee Elective Contributions due for weeks 39-50, the district court may adhere to the Joint Board’s ordinary estimation practices by *55 taking the amount paid for Employee Elective Contributions for week 38 ($1,471.09) and extrapolating that amount over the twelve weeks of Employee Elective Contributions that remain outstanding (for a total of $17,653.08). Even if the district court prefers not to extrapolate the total amount of unpaid Employee Elective Contributions from the week 38 report alone, other methods are available from which the district court might reasonably ascertain an appropriate amount of damages to award. For example, it may be appropriate to extrapolate from the average amount of Employee Elective Contributions paid for weeks 1-18 and 20-38 ($1,486.49), which can be determined using the January 31, 2006 letter from the Joint Board to Empire. Alternatively, the district court may wish to track the actual work performed during weeks 39-50 by calculating the Employee Elective Contributions as a ratio of the actual Employer Contributions calculated for weeks 39-50. Specifically, this method would require the district court to multiply the amount it calculates for the Employer Contributions by the ratio between Employee Elective Contributions and Employer Contributions, as reflected in the week 38 report alone (1.39 to 1) or in the average ratio for weeks 1-18 and 20-38 (1.65 to 1) as reflected in the January 31, 2006 letter.[3] The district court may use these or any other reasonable valuation method for determining the Joint Board’s damages due to unpaid Employee Elective Contributions.
In sum, because it appears that damages due to the Employer Contributions and the Employee Elective Contributions may be ascertained with reasonable certainty, we vacate the district court decision with respect to these damages and remand to the district court with instructions to reconsider the Joint Board’s evidence and, as warranted, to calculate a proper amount of damages to award for both components of the unpaid 401 (k) contributions. To the extent that other damages associated with the unpaid 401(k) contributions — such as prejudgement interest and liquidated damages — are appropriate, we also instruct the district court to award the Joint Board a reasonable amount for those damages.
As for the $902.93 claimed for lost interest income from the late-paid 401 (k) plan contributions, we also remand on this issue so that the district court may reconsider the extent to which these damages may reasonably be inferred from the evidence that the Joint Board presented. The lost interest income at issue is for Empire’s late payment of 401 (k) contributions in weeks 1-38. Therefore, the payroll records for weeks 39-50 cannot directly corroborate the amount of lost interest income requested. Moreover, as the district court notes, the Joint Board is not seeking an estimated amount of lost interest income due to insufficient records from Empire; rather, it is seeking the lost interest income due to actual late payments received from Empire. At the same time, the Duffy Declaration directly addresses Empire’s late payment of 401 (k) contributions, as well as the lost interest income that resulted from the delay in those payments. In its decision, the district court *56 failed to consider the import of the Duffy Declaration with respect to the lost interest income. Therefore, we vacate the district court’s judgment with respect to this element of damages and remand to the district court to reconsider whether the Joint Board’s evidence warrants a damage award for the lost interest income from the late-paid 401 (k) plan contributions.
For the foregoing reasons, the judgment of the district court is hereby VACATED in part and REMANDED for further proceedings consistent with this decision. Specifically, on remand the district court should reassess the Joint Board’s evidence with respect to unpaid 401 (k) contributions, and it should calculate and award an appropriate amount of damages for the unpaid Employer Contributions and Employee Elective Contributions. If prejudgment interest and other damages associated with the unpaid 401(k) contributions are suitable, the district court should also award these damages. Finally, on remand the district court should revisit the Joint Board’s evidence of lost investment income due to the late-paid 401 (k) contributions, and it should award damages for this lost investment income to the extent they are appropriate. In carrying out these instructions on remand, the district court retains the discretion to hold a hearing, consider additional evidence, and refer the matter to a magistrate judge for the calculation of damages.

. The district court's desire to avoid giving the Joint Board a ''windfall” and its attention to the need to give employers the opportunity to make evidentiary submissions are well taken. See Empire, 2008 WL 819948, at *3. But such concerns naturally apply with less force in a case such as this one, where the Joint Board’s claim to these damages is uncontroverted, cf. id. (citing Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir.1993)), and the evidence itself contains no inconsistency or ambiguity signaling the need for caution in using that evidence to assess the amount of damages owed, cf. id. (citing LaBarbera v. A. Morrison Trucking, Inc., 197 Fed.Appx. 18, 21 (2d Cir.2006)).

. On appeal, the Joint Board suggests that the gross wages reported during the delinquency period total $172,964.20, which when multiplied by 7.65% reflects a total of $13,231.76 in unpaid Employer Contributions. This Court's own calculation of those gross wages amounts to $173,599.45, leaving a total of $13,280.36 in unpaid Employer Contributions. On remand, the district court will have the opportunity to ascertain for itself the correct total of gross wages reflected in the payroll reports for weeks 39-50.

. For the week 38 report, we calculated a ratio of 1.39 to 1 by dividing the amount of Employee Elective Contributions for week 38 ($1,471.09) by the Employer Contributions for week 38 ($1,054.76). To calculate an average ratio of 1.65 to 1 for weeks 1-18 and 20-38, we calculated the ratio of Employee Elective Contributions to Employer Contributions for each of those weeks, took the sum of those ratios (61.17), and divided it by the total number of weeks (37). Of course, as with Employer Contributions, the district court will have the opportunity on remand to perform for itself the calculations necessary to ascertain the appropriate amount of damages to award for Employee Elective Contributions.