Deborah S. CARLONE, Plaintiff,

v.

The LION & THE BULL FILMS, INC. et al., Defendants.

No. 10 Civ. 6275(JPO).

United States District Court, S.D. New York.

April 30, 2012.

---

24. *Heath,* 455 F.3d at 60.

25. *See* Gov't Mem. at 39.

Brian D. Caplan, Jonathan James Ross, Caplan & Ross, LLP, New York, NY, for Plaintiff.

Ariel Luna, Bronx, NY, pro se.

## MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Deborah Carlone filed a complaint against The Lion & The Bull Films, Inc. ("L & B Films") and Vladimir Flener for breach of contract and against Ariel Luna for fraudulent inducement. Ms.

Carlone also seeks to pierce the corporate veil and hold Mr. Luna personally liable for L & B Films' alleged breach of contract. Presently before the Court is Ms. Carlone's motion for summary judgment against the individual defendants, Ariel Luna and Vladimir Flener, filed on January 20, 2012, and her motion for default judgment against L & B Films, filed on January 23, 2012.

For the reasons set forth below, the motion for default judgment is granted, and the motion for summary judgment is granted in part and denied in part.

## I. Background [1]

### A. Facts

Defendant Ariel Luna is a principal officer, director, and 50–percent shareholder of Defendant L & B Films. (Defendant's 56.1 Statement ("Def. 56.1 Stmt.") ¶ 1.) L & B Films was incorporated in New York on or about September 29, 2009, allegedly for the purpose of making a motion picture entitled "179th Street" (the "Film"). (Deposition of Ariel Luna, dated Sept. 26, 2011 ("Luna Dep.") 17:6–9; Def. 56.1 Stmt. ¶ 1.)

Before they began shooting the Film, Mr. Luna, together with his two partners, Mr. Nelson Pereyra and Defendant Mr. Vladimir Flener, set out to procure funding for their project. In May 2009, Mr. Luna was introduced to Mr. Furqaan Clover, who promised to help secure a standby letter of credit for the Film project. (Luna Dep. 80:16–81:22.) On or about November 9, 2009, L & B Films entered into a written agreement with Mr. Clover's company, Indie Film Exchange Holdings, Inc. ("Indie Film"), dated October 5, 2009 (the "Financing Agreement") purportedly to procure financing for the Film. (Financing Agreement, Ex. B to Carlone Decl.; Luna Dep. 31:18–32:8). The Financing Agreement provided that L & B Films would receive $15 million from Indie Film, but required L & B Films to make an initial investment of $115,000. *Id.*

Plaintiff Deborah S. Carlone is a citizen and a resident of the State of Florida. Ms. Carlone and Mr. Luna's mother, Emma Luna, had been good friends for many years prior to the incidents described in this lawsuit. (Pl. 56.1 Stmt. ¶ 9; Carlone Decl. ¶ 3; Luna Dep. 26:19–20.) Ms. Carlone and Mr. Luna had also known each other for many years, and Mr. Luna considered Ms. Carlone to be a good family friend. *Id.* In 2008, Ms. Carlone was in an accident which left her wheelchair bound for some period of time. (Carlone Decl. ¶ 4.) On or about September 25, 2008, Plaintiff received a settlement check for $123,680 as a result of a personal injury lawsuit stemming from the accident. (*Id.*) Thereafter, Mr. Luna's mother accompanied Ms. Carlone when she went to pick up the settlement check and when she went to deposit the check in her bank account.

On or about November 8, 2009, after his mother's visit to New York, Mr. Luna called Ms. Carlone and asked her for a short term "bridge loan" of $115,000 to fund production of the Film until additional financing arrived. (Pl. 56.1 Smt. ¶ 14; Carlone Decl. ¶¶ 2, 7, 18; Luna Dep. 26:17–27:4.) Mr. Luna also promised Plaintiff that, in return for an initial loan of $115,000 (the "Loan Amount"), Plaintiff would receive the Loan Amount plus an additional $185,000, a sum of $300,000 (the "Repayment Amount"), within 30 days. (Pl. 56.1 Smt. ¶ 15; Carlone Decl. ¶ 7; Luna Dep. 110:18–25.) Mr. Luna did not disclose to Ms. Carlone the existence of the Financing Agreement with Indie Film. (Carlone Decl. ¶ 17.)

---

**1.** The following facts are drawn from the parties' Local Rule 56.1 statements and other submissions and are undisputed unless otherwise noted.

Soon after, Mr. Luna emailed Ms. Carlone a written agreement memorializing the terms discussed in their phone conversation (the "Agreement"). (Agreement, Ex. A to Carlone Decl.; Carlone Decl. 9; Pl. Smt. ¶ 18.) The Agreement provided that Ms. Carlone was to provide L & B Films $115,000 within 24 hours and that L & B Films would repay Ms. Carlone a total sum of $300,000 within 30 days of receipt of the original loan. (Agreement ¶¶ 1, 3.) The Agreement also guaranteed Ms. Carlone one percent of the net United States box office receipts of the Film. (Agreement ¶ 4.) Mr. Flener agreed to secure and collateralize the Loan Amount with his 401(k) account. (Agreement ¶ 2.)

Mr. Luna told Ms. Carlone that speed was very important, and there was no time to have her lawyer review the Agreement before she signed it. Ms. Carlone states that it was partly because of Mr. Luna's urgency to receive the money that he offered such attractive terms. (Carlone Decl. ¶ 9; Pl. 56.1 Smt. ¶ 19.) On November 11, 2009, Ms. Carlone signed the Agreement without making any changes to it; Mr. Luna and Nelson Pereyra signed the Agreement for L & B Films, and Mr. Flener signed the Agreement as guarantor of the original Loan Amount. (Agreement, Ex. A, Carlone Decl.)

On November 12, 2009, pursuant to the Agreement, Ms. Carlone wired $115,000 into the bank account of L & B Films. (Carlone Decl. ¶ 12.) On the same day, Mr. Luna caused these funds to be transferred to an attorney, Mr. Richard A. Portale, Esq., who in turn transferred the money to Mr. Wolfgang Zulauf pursuant to the terms of the Financing Agreement with Indie Film. (Def. 56.1 Stmt. ¶ 6; TD Bank Statements, Ex. A; Luna Dep. 121:5–11).

Mr. Luna asserts that immediately after the money was transferred to Indie Film, Mr. Clover stopped taking his phone calls.

(Luna Dep. 12–17.) Mr. Luna maintains that with the exception of Mr. Portale, the parties involved in the Financing Agreement disappeared, along with the $115,000 that Ms. Carlone had provided to L & B Films. Mr. Luna alleges that he was the victim of a scam perpetrated against him by Mr. Clover, Mr. Portale, and Indie Film. (*See* Third Party Complaint, Dkt. No. 17.) Ms. Carlone has not received the $300,000, as provided by the Agreement, nor has her original $115,000 loan been refunded. (Carlone Decl. ¶ 16.)

**B. Procedural History**

Plaintiff filed her complaint on August 20, 2010. Mr. Luna and Mr. Flener, appearing *pro se*, answered the complaint on September 17, 2010. L & B Films also attempted to answer the complaint, *pro se*, on September 17, 2010. By order dated November 15, 2010, Judge Laura Taylor Swain, to whom this case was previously assigned, informed Defendants that L & B Films, an artificial entity, is not permitted to proceed *pro se*. (Dkt. No. 8.) Judge Swain granted L & B Films 30 days from the date of the order to appear by counsel and answer the complaint. (*Id.*) During a conference on November 10, 2010, Judge Swain granted L & B Films an additional period of time, until January 14, 2011, to appear by counsel. (*See* Dkt. No. 14.) To date, L & B films has not retained counsel.

On April 21, 2011, Mr. Luna and Mr. Flener filed a third party complaint against Mr. Furquaan Clover, Mr. Richard Portale, Indie Film, and Citibank, NA. (Dkt. No. 17.) On August 1, 2011, Judge Swain endorsed the parties' stipulation to dismiss Citibank, NA from the action with prejudice. (Dkt. No. 22.)

The matter was reassigned to the undersigned on October 13, 2011. Counsel for Plaintiff, as well as Mr. Luna and Mr. Flener, appeared for a pre-motion confer-

ence before the Court on November 29, 2011. Plaintiff moved for summary judgment against Mr. Luna and Mr. Flener on January 20, 2012, and moved for default judgment against L & B Films on January 23, 2012. (Dkt. Nos. 27, 34.)

In an order dated February 14, 2012, the Court warned the third-party plaintiffs that they must file proof of service of the third-party complaint by February 22, 2012 or the third-party complaint would be dismissed for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). (Dkt. No. 38.) On February 22, 2012, third-party plaintiffs filed an affidavit of service of the third-party complaint on Mr. Portale, dated October 13, 2011. (Dkt. No. 40.) Counsel for Plaintiff, as well as Mr. Luna and Mr. Flener, again appeared for a conference before the Court on February 29, 2012. During the conference, Mr. Luna explained that he had been unable to serve Mr. Clover and Indie Films. (Transcript dated February 29, 2012 ("Tr."), at 32.) During the conference, the Court dismissed the third-party complaint against Mr. Clover and Indie Film without prejudice. (*Id.* at 33.)

## II. Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir.2010). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir.2010). "In deciding a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156,

164 (2d Cir.2011) (internal citations omitted).

### A. Breach of Contract

■ Plaintiff alleges that Defendants L & B Films and Mr. Flener breached the Agreement. It is undisputed that New York law governs the Agreement. (*See* the Agreement ¶ 6.) To make out a breach of contract claim under New York law, a plaintiff must show (1) the existence of a contract between the plaintiff and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) damages to the plaintiff caused by the defendant's breach. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir.2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004), and *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996)).

### 1. L & B Films

■ Plaintiff has moved for default judgment against L & B Films on the breach of contract claim. A corporation may not appear *pro se*, but must retain counsel to avoid default. *See, e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel."). After the Clerk of Court has filed an entry of default against a corporation that has failed to plead or otherwise defend, a court may enter default judgment upon application of the opposing party, pursuant to Fed. R.Civ.P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981). However, default judgment is ordinarily justified

when a party fails to respond after having received proper notice. *See Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984). After default has been entered, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. *See Transatlantic Marine . Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997).

■ Here, despite several admonitions from the Court to Mr. Luna concerning the requirement that L & B Films appear through counsel, L & B Films has never been represented by counsel in this action. L & B Films has been given notice of Plaintiff's motion for default judgment against it, and the Clerk of Court has filed an entry of default by L & B Films. Plaintiff's breach of contract claim against L & B Films is well-pleaded, and, thus, the Court deems it admitted.

The Court further notes that, although not required for a default judgment, the evidence in the record supports a finding that L & B Films breached the Agreement with Ms. Carlone: (i) Ms. Carlone entered into the November 11, 2009 Agreement with L & B Films and Mr. Flener; (ii) Ms. Carlone performed her obligations under the contract, providing $115,000 to L & B Films; (iii) L & B Films failed to meet its obligations under the contract to provide the $300,000 Repayment Amount to Ms. Carlone; and (iv) Ms. Carlone suffered damages as a result.

■ In their Joint Declaration in Opposition to Motion for Summary Judgment, Mr. Luna and Mr. Flener argue that the Agreement with Ms. Carlone is unenforceable as a matter of public policy because the terms of the Agreement are usurious under the New York State Penal Code. (Dkt. No. 39.) Usury, however, is an affir-

mative defense, and L & B Films, which is currently in default, has not raised the usury defense or any other defense in this action.[2] *See Schreiner v. Feichtmayr*, 234 N.Y.S.2d 631, 633 (Sup.Ct.1962) ("From time immemorial it has been held that a party claiming that an obligation is usurious must plead the facts relative to the taking of the excessive interest. If he fails to plead the usurious taking, he is deemed to have waived the defense."); *see also In re Higgins*, 270 B.R. 147, 156 (S.D.N.Y.Bankr.2001).

■ Accordingly, Plaintiff's motion for default judgment against L & B Films is granted. Under New York law, Plaintiff is entitled to contract damages in an amount that would place her in the same economic position she would have enjoyed had L & B Films fully performed the contract. *See Hallingby v. Hallingby*, 693 F.Supp.2d 360, 368–69 (S.D.N.Y.2010) (citing *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728–29 (2d Cir.1992)). The Agreement is clear that Ms. Carlone was to be paid $300,000 within thirty days of her initial loan. Ms. Carlone is entitled to an award of $300,000 against L & B Films, plus an award of prejudgment interest at a rate of 9 percent from the date of the breach through the entry of the judgment.

### 2. Ariel Luna's Liability for L & B Films' Breach

As noted, Mr. Luna is a principal officer, director, and 50–percent shareholder of L & B Films. Plaintiff argues that the corporate veil should be pierced to hold Mr. Luna personally liable for the breach of contract by L & B Films.

■ New York law establishes two requirements for piercing the corporate

---

2. The question whether a guarantor or a principal, who is held personally liable for a corporations' liabilities, may assert a usury de-

fense when the corporation has failed to do so is addressed below.

veil and thus holding an individual liable for corporate action: "1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir.2001); *see also Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.,* 2 F.3d 24, 26 (2d Cir.1993) ("Liability therefore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties."). Factors that courts consider when determining whether it is appropriate to pierce the corporate veil include:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991) (citations omitted).

■ Here, Plaintiff has demonstrated beyond genuine dispute that Mr. Luna completely controlled and dominated the corporation. L & B Films, which was formed only 44 days prior to entering into the Agreement with Plaintiff, was exceedingly undercapitalized, having only $50.00 in its corporate account before the transfer of the Loan Amount from Plaintiff into the account. Apart from the money it received from Plaintiff, the corporation has had no other assets. Nor does L & B Films have corporate headquarters. The corporation conducts business out of Mr. Luna's residence. (Luna Dep. 20:11–25.) Mr. Luna and his partner, Mr. Nelson Pereyra, are the sole officers of L & B Films, and the meetings between them are informal. There are no formal board meetings at which minutes are kept. (Luna Dep. 15: 9–13.) Apart from the deal with Ms. Carlone, the corporation has conducted no other business during its existence. (Luna Dep. 18:4–8.) There is no evidence of any exercise of discretion by L & B Films that was independent of Mr. Luna's exercise of discretion. Moreover, there is no genuine dispute that Mr. Luna used his control of L & B Films to effect the entering into the Agreement with Plaintiff, which took place as a result of Mr. Luna's personal relationship with Plaintiff.

Accordingly, there is no genuine issue of material fact as to the appropriateness of piercing the corporate veil to hold Mr. Luna personally liable for the breach of contract by L & B Films.

### 3. Vladimir Flener's Liability As Guarantor

■ Mr. Flener signed the Agreement with Plaintiff, which provided that the Loan Amount (*i.e.,* $115,000) "shall be secured and collateralized by the 401K account owned by Vladimir Flener[,] an employee of Universal Music Group."

(Agreement ¶ 2.) During the conference with the Court on February 29, 2012, Mr. Flener explained that he believed in the film project, so he used his 401(k) account, his only resource, to guarantee the loan. (*See* Tr. at 16.)

The evidence in the record demonstrates that Plaintiff performed her obligation under the Agreement by providing the $115,000 to L & B Films. Yet, despite L & B Film's failure to repay her, it is undisputed that Mr. Flener has not fulfilled his contractual obligation to Plaintiff as guarantor of repayment of the Loan Amount.

Accordingly, there is no genuine dispute as to Mr. Flener's liability to Plaintiff for the Loan Amount of $115,000.

#### 4. The Usury Defense

Notwithstanding the conclusions above as to the contractual liability of Mr. Luna (for L & B Films' breach) and of Mr. Flener (as guarantor), it is necessary to consider whether the defense of usury precludes imposition of such liability as to either individual defendant.

 Statutes prohibiting usurious loans were enacted "to protect desperately poor people from the consequences of their own desperation." *Seidel v. 18 East 17th Street Owners, Inc.,* 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 598 N.E.2d 7 (N.Y.1992) (citing *Schneider v. Phelps,* 41 N.Y.2d 238, 391 N.Y.S.2d 568, 359 N.E.2d 1361 (N.Y. 1977)). New York law prohibits both civil and criminal usury. *Sabella v. Scantek Medical, Inc.,* No. 08 Civ. 453, 2009 WL 3233703, at *16 (S.D.N.Y. Sept. 21, 2009). Under the civil usury statute, a loan is void (with exceptions) if the interest rate exceeds 16 percent. N.Y. Gen. Oblig. Law § 5–501 (McKinney 2009). Corporations may not assert a civil usury defense in New York, but rather may assert only a criminal usury defense. N.Y. Gen. Oblig. Law § 5–521(3) (McKinney 2009); *see also Ammirato v. Duraclean International,*

*Inc.,* 687 F.Supp.2d 210, 220 (E.D.N.Y. 2010). The criminal usury statute prohibits a person from knowingly charging interest on a loan at a rate exceeding 25 percent. *Id.* at 221; N.Y. Pen. Law § 190.40 (McKinney 2009). It is an open question under New York law whether a criminally usurious loan is void *ab initio* or whether a successful defense based on criminal usury results merely in the cancellation of the interest obligation or in a revised obligation to pay a non-usurious rate. *Venture Mortgage Fund, L.P. v. Schmutz,* 282 F.3d 185, 189 (2d Cir.2002); *American Equities Group, Inc. v. Ahava Dairy Products Corp.,* No. 01 Civ. 5207, 2007 WL 4563487, at *5 (S.D.N.Y. Dec. 18, 2007).

Here, Mr. Luna and Mr. Flener pleaded usury as an affirmative defense when they answered the complaint on September 16, 2010, and raised the usury defense again in opposition to Plaintiff's motion for summary judgment. The Agreement provided for the Loan Amount of $115,000 to be repaid in 30 days in the amount of $300,000. Thus, the interest contemplated in the Agreement—in excess of one hundred percent—clearly implicates both the civil and criminal usury statutes. Notwithstanding that fact, Plaintiff argues that L & B Films, through its default, has waived the opportunity for the other defendants, Mr. Luna and Mr. Flener, to raise the usury defense on behalf of the defaulting corporation. Mr. Luna and Mr. Flener stand in different positions vis-à-vis the defaulting corporation, L & B Films: Mr. Luna as a shareholder who is personally liable (via piercing of the corporate veil), and Mr. Flener as guarantor of the original $115,000 Loan Amount under the Agreement.

 A guarantor of a corporation's debt is entitled to interpose the same usury defense to which the corporation is

entitled. *See Sabella v. Scantek Medical, Inc.*, No. 08 Civ. 453, 2009 WL 3233703, at *16 (S.D.N.Y. Sept. 25, 2009). In *Sabella*, the guarantor, Zsigmond L. Sagi, was not allowed to assert a civil usury defense because the corporation, for which he acted as a guarantor, was not allowed to assert a civil usury defense.[3] "A corporation may, however, assert criminal usury as a defense to repayment.... Because Sagi personally guaranteed a corporation's loans, he [was] allowed to assert the same usury defense as the corporation." *Sabella*, 2009 WL 3233703, at *16 (citing *Shifer v. Kelmendi*, 204 A.D.2d 300, 611 N.Y.S.2d 575 (2d Dep't 1994)); *see also Thelma Sanders and Associates, Inc. v. Friedman*, 137 A.D.2d 677, 524 N.Y.S.2d 768, 769 (2d Dep't 1988) (allowing guarantor to interpose a usury defense where corporation had defaulted and corporate form had been used to conceal usurious loan to discharge the guarantor's personal obligations); *Nextbridge Arc Fund, LLC v. Vadodra Property, LLC*, 31 Misc.3d 1202(A), No. 7235/10, 2011 WL 1124347, at *2 (Sup.Ct.N.Y.2011) ("Furthermore, because an individual guarantor may be viewed as standing in the shoes of the principal, such guarantor can avail only those defenses available to the principal."). Because Mr. Flener personally guaranteed the Loan Amount, he is entitled to assert the same usury defense—criminal usury—that the corporation would have been able to assert had it not defaulted.[4]

Similarly, the Court concludes that L & B Films' waiver does not preclude a shareholder, Mr. Luna, from interposing a usury defense in the situation in which the shareholder has been held personally liable for the corporation's debt. As a result of piercing the corporate veil, Mr. Luna is effectively in the same position as a guarantor of the corporation's debt. Consequently, Mr. Luna is entitled to assert the usury defense that the corporation would have been entitled to assert had it not defaulted: in this case, the defense of criminal usury.

■ But that does not end the matter. "[A] borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction." *Seidel*, 79 N.Y.2d at 743, 586 N.Y.S.2d 240, 598 N.E.2d 7. "Otherwise a borrower could void the transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through his own subterfuge and inequitable deception." *Id.* (citations omitted). Special relationships that may preclude assertion of the usury defense include attorney-client, fiduciary or trus-

---

**3.** A guarantor of corporate debt may be allowed to assert a civil usury defense where the loan in actuality is used to discharge the guarantor's personal indebtedness and not to further the corporate interest. *See, e.g., Shifer v. Kelmendi*, 204 A.D.2d 300, 611 N.Y.S.2d 575, 575 (2d Dep't 1994).

**4.** Plaintiff suggests that Mr. Flener lacks standing to assert a usury defense because the loan was not usurious as to him. Indeed, Mr. Flener guaranteed only the principal on the loan (the "Loan Amount"), not the interest. As a guarantor, however, his liability is derivative of L & B Films' failure to perform, and he "stand[s] in the shoes" of the corporation. *Nextbridge Arc Fund*, 2011 WL 1124347, at

*2. In theory, therefore, he should be able to assert the defense under New York law. If a principal obligor has the right to have a loan deemed void *ab initio* because it is usurious, a guarantor should have the same right to challenge the loan, notwithstanding the fact that the guarantor did not guarantee the interest amount. As discussed below, it is unclear whether New York law favors such an extreme remedy for criminal usury (cancellation of the entire loan), as distinguished from a more modest remedy (cancellation or reduction of only the interest). The latter remedy would be of no help to Mr. Flener. But that issue goes to the *remedy* for usury, not the right to assert it as a defense.

tee, or a longstanding friendship or its equivalent. *In re Venture Mortgage Fund, L.P.,* 245 B.R. 460, 475 (S.D.N.Y.Bankr.2000); *see also Abramovitz v. Kew Realty Equities, Inc.,* 180 A.D.2d 568, 580 N.Y.S.2d 269, 269 (1st Dep't 1992) ("A borrower, who, because of a fiduciary or other like relationship of trust with the lender, is under a duty to speak and who fails to disclose the illegality of the rate of interest he proposes, is estopped from asserting the defense of usury where the lender rightfully relies upon the borrower in making the loan.").

 Here it is undisputed that the longstanding friendship between Ms. Carlone and Mr. Luna's mother was the key to the loan transaction. This was not an arms-length deal, but a transaction born of the history of the relationship between Mr. Luna's family and Ms. Carlone. When asked at the February 29, 2012 conference why he offered Ms. Carlone a contract with interest that exceeded one hundred percent, Mr. Luna stated that "the reason was because she was trusting me ... [b]ecause she has been such a family friend for such a long time." (Tr. at 7–8.) In addition, the undisputed facts support the conclusion that Mr. Luna induced the Plaintiff to rely on the representation that the transaction was properly structured. Mr. Luna's attorney drafted the Agreement, which Ms. Carlone signed without editing after Mr. Luna told Ms. Carlone that there was insufficient time for her attorney to review the contract prior to her signing it. (Carlone Decl. ¶ 2–14.) Mr. Luna also admitted that he proposed such a high interest rate, in part, to make Ms. Carlone feel comfortable with the transaction. (*See* Luna Dep. 108:13–20.) In these circumstances, Ms. Carlone relied on Mr. Luna's representations as to the propriety and legality of the Agreement. Given the longstanding relationship between Mr. Luna and Ms. Carlone and the other undisputed facts, the Court concludes that Mr. Luna is estopped from asserting a usury defense.

Therefore, Mr. Luna is jointly and severally liable with L & B Films for the damages resulting from the breach of the Agreement with Plaintiff, in the amount of $300,000, plus prejudgment interest.

 As discussed above, Mr. Flener, as a guarantor, is entitled to interpose the same criminal usury defense that the corporation would have been entitled to assert absent its waiver. *See Sabella,* 2009 WL 3233703, at *16. However, Mr. Flener guaranteed only the original Loan Amount ($115,000), and his liability therefore does not extend to any portion of the usurious interest. Mr. Flener could benefit from the usury defense only if the Court concluded that the remedy for criminal usury is to void the entire contract *ab initio.* If the contract were deemed void, Mr. Flener would be excused from his liability for the original loan. However, it is an open question whether a criminally usurious contract is void entirely, or whether a district court should apply a non-usurious interest rate or eliminate the interest obligation completely while preserving the lender's right to the principal. Voiding the entire loan contract could lead to unjust results in many cases, as the facts of this case demonstrate. *See, e.g., American Equities,* 2007 WL 4563487, at *6 (noting that New York courts have recognized that "the consequences to a lender of voiding a usurious loan transaction are harsh"). The better approach, at least in circumstances like those presented here, is to void only the usurious interest rate, not the entire loan agreement. Under that approach, the remedy for Mr. Flener's usury defense would not alter his liability: he would still be liable for $115,000 Loan Amount that he guaranteed.

In any event, there is an additional reason that Mr. Flener's usury defense fails.

A guarantor of a loan is not permitted to assert usury as a defense where the primary obligor is estopped from asserting it. *See Diller v. Schick*, No. 96 CIV. 4140, 1998 WL 214882, at *1 (S.D.N.Y. April 28, 1998) (noting that guarantors cannot avail themselves of the usury defense where the obligor is estopped from raising it as a defense); *European American Bank & Trust Co. v. Boyd*, 131 A.D.2d 629, 516 N.Y.S.2d 714, 716 (1987) ("The defendant is also precluded from asserting the defense of usury since a guarantor stands in the shoes of the principal and can avail himself of only those defenses available to it."). L & B Films, had it not waived the usury defense through its default, would have been estopped from interposing it due to the nature of the special relationship between its principal and shareholder, Mr. Luna, and Ms. Carlone. Because L & B Films would have been estopped from interposing a usury defense, Mr. Flener, as guarantor, is also estopped from asserting the usury defense.

Because there are no genuine disputes of material fact as to Mr. Flener's liability for breach of the Agreement, summary judgment will be granted to Plaintiff on the breach of contract claim against Mr. Flener. Under New York law, Plaintiff is entitled to compensatory damages that would place Plaintiff in the same economic position she would have enjoyed had Mr. Flener fully performed the contract. *See Hallingby*, 693 F.Supp.2d at 368–69 (citations omitted). Therefore, Ms. Carlone is entitled to an award of $115,000 against Mr. Flener, plus prejudgment interest at a rate of 9 percent from the date of the breach through the entry of the judgment.

### 5. Nelson Pereyra As a Necessary Party

Mr. Luna and Mr. Flener further argue that Mr. Nelson Pereyra, Mr. Luna's business partner, is an indispensable party to the action and that in his absence the complaint should be dismissed pursuant to Fed.R.Civ.P. 19. Courts employ a two-step test to determine whether dismissal under Rule 19 is appropriate. *Davidson Well Drilling v. Bristol–Myers*, No. 09 Civ. 1431, 2009 WL 2135396, at *3 (S.D.N.Y. July 16, 2009) (citing *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000)). First the court determines whether a party is necessary under Rule 19(a); only if the answer is affirmative does the court turn to the second step of the test under Rule 19(b) to determine whether the party is indispensable requiring dismissal of the action. *Id.*

A non-party to a contract is ordinarily not a necessary party to a lawsuit asserting a breach of contract claim. *ConnTech v. Univ. of Conn.*, 102 F.3d 677, 682 (2d Cir.1996); *Huntington Hospital v. New England Insurance*, No. 04 Civ. 4195, 2005 WL 486703, at *3 (S.D.N.Y. Mar. 1, 2005). Here, although Mr. Pereyra and Mr. Luna both signed the Agreement for L & B Films, Mr. Pereyra is not personally a party to the contract, which was entered into solely among Ms. Carlone, L & B Films, and Mr. Flener. As such, Mr. Pereyra is not a necessary party whose joinder to the action is indispensable to afford complete relief to the parties. Furthermore, Ms. Carlone never met or spoke with Mr. Flener, but interacted solely with Mr. Luna. There is no requirement that Plaintiff advance a claim to pierce the corporate veil as it applies to all "officers" of the corporation merely because she does so for one officer. *See, e.g., Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 890 (2d Cir.1944); *R.D. Weis & Co., Inc. v. The Children's Place Retail Stores, Inc.*, No. 08 Civ. 4245, 2008 WL 4950962, at *5 (S.D.N.Y. Nov. 19, 2008) ("[W]ell established precedent holds that one of several joint obligors is not an indispensable party

to an action against the others.") (internal citations and quotation marks omitted).

The Court concludes, based on the undisputed facts, that Mr. Pereyra is not an indispensable party for purposes of Rule 19.

### B. Fraudulent Inducement

 Plaintiff also argues that she is entitled to summary judgment against Mr. Luna on the fraudulent inducement claim and is entitled to punitive damages as a result. To maintain a cause of action for fraudulent inducement under New York law, it must be established "that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir.2007). To maintain a fraud claim that stems from a breach of contract, the allegations of fraud must be sufficiently distinct from the breach of contract claim. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996). To make out a case for punitive damages for fraud, a plaintiff must demonstrate that a defendant acted with "wanton and reckless disregard of plaintiff's rights." *PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 2755835, at *4–5 (S.D.N.Y. July 14, 2008). Punitive damages may be awarded "where a defendant entered into an agreement with a clear and blatant intent to defraud." *Ventus Networks, LLC v. Answerthink, Inc.*, No. 05 Civ. 10316, 2007 WL 582736, at *3 (S.D.N.Y. Feb. 22, 2007) (citations omitted).

 Ms. Carlone argues that Mr. Luna did not have the ability to meet his obligations to her under the Agreement, and that despite knowing that the obligations could not be met, he purposefully made false representations to Ms. Carlone in order to induce her to enter into the Agreement. Plaintiff asserts that even if L & B Films had obtained funding under the Financing Agreement with Indie Films, there was no provision in the Financing Agreement that would have allowed L & B Films to use the funds to pay Ms. Carlone. (Pl. 56.1 Stmt. ¶ 20; Carlone Decl.; Luna Dep. 38:23–39:11.) Plaintiff also argues that under the terms of the Financing Agreement, L & B Films would not have received the capital necessary to provide Ms. Carlone the Repayment Amount within the 30 days provided in the Agreement.

Mr. Luna adamantly denies that he acted intentionally to induce Ms. Carlone to part with her money and insists that he intended to repay her. (*See, e.g.*, Tr. at 28.) Mr. Luna asserts that at the time L & B Films and Ms. Carlone entered the Agreement, he believed that L & B Films would be able to pay Ms. Carlone the $300,000 Repayment Amount within the 30 days pursuant to the Agreement, once L & B Films received the first disbursement from the Financing Agreement. (*Id.* at 8.) He maintains that it always was—and still remains—his intention to find a way to repay Ms. Carlone.

Drawing all inferences in favor of the non-moving party, the Court concludes that there are genuine issues of material fact precluding summary judgment on the fraudulent inducement claim. Plaintiff has not established beyond genuine dispute that Mr. Luna intentionally misrepresented his ability to repay Ms. Carlone at the time they signed the contract. It is possible that Mr. Luna believed sincerely (although perhaps naively) that he would be able to pay her the Repayment amount in 30 days, given his hoped-for financing. Deciding the issue of intent would likely require credibility determinations that are

not appropriately resolved on summary judgment.

Furthermore, it is not established by undisputed fact that Plaintiff's fraudulent inducement claim is sufficiently distinct from the breach of contract claim to warrant separate relief. Significantly, as Plaintiff admits, she has not suffered any harm as a result of Mr. Luna's alleged fraudulent inducement that is not duplicative of the damages suffered from the breach of the Agreement, nor has she established beyond dispute that she is entitled to punitive damages on the fraudulent inducement claim as a matter of law.

Consequently, Plaintiff's motion for summary judgment against Mr. Luna as to the fraudulent inducement claim is denied.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment against L & B Films for breach of contract is GRANTED, and the Court awards damages in the amount of $300,000 plus prejudgment interest at the rate of 9 percent from the date of breach to the date of judgment.

Plaintiff's motion for summary judgment against Defendant Ariel Luna for breach of contract is GRANTED; the Court holds Defendant Luna jointly and severally liable for L & B Films' breach of contract and awards damages in the amount of $300,000 plus prejudgment interest at the rate of 9 percent from the date of breach to the date of judgment.

Plaintiff's motion for summary judgment against Defendant Vladimir Flener for breach of contract is GRANTED; the Court holds Defendant Flener jointly and severally liable for the damages assessed against L & B Films and Defendant Luna in the amount of $115,000 plus prejudgment interest at the rate of 9 percent from the date of breach to the date of judgment.

Plaintiff's motion for summary judgment against Defendant Luna on the fraudulent inducement claim is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 27 and 34.

Counsel for Plaintiff is directed to submit a proposed judgment consistent with this opinion within 7 days.

SO ORDERED.

